UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANIEL BANNASCH,

        Petitioner,

                                      CIVIL ACTION NO. 09-11564

v.

                                        PAUL D. BORMAN
SHERRY L. BURT,                         UNITED STATES DISTRICT JUDGE

        Respondent.

_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Daniel Bannasch has filed a *pro se* habeas corpus petition challenging his state convictions for two counts of first-degree criminal sexual conduct. He claims that the trial court used an improper standard to resolve his motion to quash the criminal information, his trial and appellate attorneys were ineffective, the prosecutor committed misconduct, and the evidence was insufficient to convict him. Respondent Sherry L. Burt argues through counsel that Petitioner's claims either lack merit or are procedurally defaulted because they were not raised in the appeal of right. The Court has determined from a review of the pleadings and record that Petitioner's claims lack merit. Accordingly, the petition will be denied.

### I. Background

### A. The Charges, Trial, and Sentence

Petitioner initially was charged with two counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. At the preliminary examination, the second-degree charge was amended to read first-degree criminal sexual conduct. The charges

arose from allegations that Petitioner sexually penetrated his five-year-old nephew in 1995 while

the child was living with Petitioner and his wife in Melvindale, Michigan.

Petitioner was tried without a jury in Wayne County Circuit Court on three counts of

first-degree criminal sexual conduct. *See* Mich. Comp. Laws § 750.520b(1)(a) (sexual

penetration of a person under the age of thirteen). Count one alleged that Petitioner put his penis

in the complainant's anus; count two alleged that Petitioner put the complainant's penis in

Petitioner's mouth; and count three alleged that Petitioner put his penis in the victim's mouth.

On June 21, 2004, the trial court acquitted Petitioner of count one, but found him guilty of counts

two and three.

The state court summarized the facts giving rise to Petitioner's convictions as follows:

> The complainant lived with the defendant and his wife, Verna Bannasch, for a
> short period of time in 1995, while his mother, Vicki Hancock, participated in an
> in-patient drug treatment program and his father served time in jail. The
> complainant, who was 14 years old by the time of trial, testified that defendant
> played a pornographic movie and instructed him to undress and lie on the floor.
> The complainant alleged that defendant then anally penetrated him, ejaculated
> into his mouth, and performed oral sex upon him. In fact, defendant *admitted*
> during a tape-recorded statement made to an investigating officer that he kissed
> the complainant's penis for approximately 30 seconds. The complainant stated
> that Mrs. Bannasch was home, but in her bedroom, during this incident.[1]
>
>            Although this incident occurred in 1995, formal charges were not brought
> against defendant until the fall of 2003. Ms. Hancock testified at a pretrial
> evidentiary hearing that her son told her about the sexual abuse shortly after she
> returned from a rehabilitation center in October of 1995. She further testified that
> she immediately reported the incident to the Melvindale Police Department. Ms.
> Hancock claimed that an assistant prosecuting attorney with the Wayne County
> Prosecutor's Office told her that the complainant, who is developmentally
> delayed, was "too easily led" as a witness and that there was insufficient evidence
> to prosecute the defendant. However, the prosecutor in this case indicated that

---

[1] Defendant conceded at oral argument that his stepchildren, who were then aged ten and twelve, potentially could also have been at home during the alleged incident.

the prosecutor's office had no record of these events.  Melvindale police sergeant Bradley Kropik further testified that there was no record that Ms. Hancock ever reported this incident to his department.  The instant charges were filed when a Child Protective Services caseworker filed a police report after learning of the abuse in 2002 or 2003.[2]

*People v. Bannasch*, No. 257077 (Mich. Ct. App. Feb. 7, 2006) (italics and footnotes in original).

On July 6, 2004, the trial court sentenced Petitioner to imprisonment for concurrent terms of nine to fifteen years for each count.

## B.  The Appeals

On appeal from his convictions, Petitioner alleged that the trial court erred in denying his motion to quash and that trial counsel was ineffective for incorrectly framing the issue in the motion to quash, for being unprepared at trial, and for stating that Petitioner was guilty of count two.  The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished, *per curiam* decision.  *See id.*

Petitioner raised the same issues and an additional issue in an application for leave to appeal in the Michigan Supreme Court.  The new issue alleged that appellate counsel was ineffective for not presenting a claim about trial counsel's failure to produce two witnesses at trial and counsel's failure to defend the case on a suggestive-fabrication and false-allegation defense.   On July 31, 2006, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions.  *See People v. Bannasch*, 476 Mich. 858 (2006) (table).

Petitioner subsequently filed a motion for relief from judgment in which he alleged that: (1) trial counsel was ineffective for (a) failing to investigate a defense of suggestive fabrication

_____

[2]  The complainant was briefly placed into foster care in 2002.  He told his foster parents of the prior incident of sexual abuse.  They, in turn, reported the incident to the caseworker.

and false allegation, (b) misrepresenting the law regarding the admissibility of a social worker's testimony, and (c) failing to challenge alleged hearsay; (2) appellate counsel was ineffective for failing to claim that trial counsel was ineffective for not raising a suggestive-fabrication and false-allegation defense; (3) the prosecutor's misconduct deprived Petitioner of a fair trial; (4) the verdict was against the great weight of the evidence; and (5) there was good cause for failing to raise the legal bases for these issues on appeal.  The trial court denied Petitioner's motion in a reasoned opinion, and the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Bannasch*, No. 279098 (Mich. Ct. App. Jan. 11, 2008).  On July 29, 2008, the Michigan Supreme Court denied leave to appeal for the same reason.  *See People v. Bannasch*, 482 Mich. 893 (2008) (table).

## C.  The Habeas Petition

Petitioner filed his habeas corpus petition on April 27, 2009.  His claims are:

I.      Petitioner was denied his federal constitutional right to due process of law, contrary to the Fourteenth Amendment, where the trial court used an improper due process standard to resolve Petitioner's motion to quash the information.

II.     Petitioner's constitutional rights to the effective assistance of counsel were violated where, for the numerous reasons set forth below, he was prejudiced by his lawyer's failure to perform at an objective standard of reasonable competence.

III.    Petitioner was denied the effective assistance of counsel when counsel failed to investigate the potential for raising a suggestive fabrication and false allegation defense at trial.

A.      Petitioner was denied the effective assistance of counsel when counsel misrepresented the law causing Petitioner to waive his right to

4

confrontation of a viable witness.

B.     Petitioner was denied the effective assistance of counsel when counsel failed to challenge the introduction of impermissible hearsay evidence at trial.

IV.     Petitioner was denied his federal constitutional right to the effective assistance of appellate counsel for failure to raise [the] trial counsel ineffectiveness claim.

A.     Appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel claim of not investigating and raising a suggestive fabrication and false allegation defense.

V.     Petitioner's federal constitutional right to a fair and impartial trial was violated where, for the numerous instances of prosecutorial misconduct, Petitioner was denied due process.

A.     The prosecution continuously led the complainant witness during direct examination.

B.     The prosecution inappropriately bolstered the complainant's testimony.

C.     The prosecution inappropriately [referred] to evidence nonexistent in the record.

VI.     The evidence presented at trial was insufficient to convict Petitioner in violation of the Due Process Clause of the Fifth and Fourteenth Amendments.

Although Respondent argues that claims three through six are procedurally defaulted, procedural default is not a jurisdictional limitation, *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010), and the Court finds it more efficient to address the merits of Petitioner's claims than to analyze whether they are procedurally defaulted. The Court therefore will excuse the alleged procedural defaults and proceed to address the substantive merits of Petitioner's claims, using the following standard of review.

5

## II.  Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, Petitioner is not entitled to the writ of habeas corpus unless the state court's adjudication of his claims on the merits

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.


"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal

law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.
"[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by
clear and convincing evidence, the presumption that the state court's factual findings are
correct." *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1)
and *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so
long as 'fairminded jurists could disagree' on the correctness of the state court's decision."
*Richter*, 131 S. Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain
a writ of habeas corpus from a federal court, a state prisoner must show that the state court's
ruling on his or her claim "was so lacking in justification" that it resulted in "an error well
understood and comprehended in existing law beyond any possibility for fairminded
disagreement." *Id*. at 786-87.

### III.  Discussion

### A.  Denial of the Motion to Quash

The first habeas claim alleges that the trial court used an improper standard to resolve
Petitioner's motion to quash the criminal information.  The motion alleged that Petitioner was
denied his right to a speedy trial under the Michigan and Federal Constitutions because he was
charged in 2003 for an incident that supposedly occurred in 1995.

The trial court held an evidentiary hearing on Petitioner's motion before trial.  Defense
counsel argued at the hearing that Petitioner was prejudiced by the delay in bringing charges
against him because his wife was the only other adult in the house at the time of the alleged
crime and she died before he was charged.  Petitioner also claimed that he was prejudiced by the

7

fact that the complainant's allegations likely were confirmed and re-emphasized over the years, making it almost impossible to cross-examine him.  The trial court denied Petitioner's motion on the ground that Petitioner had not shown "undue prejudice" as a result of the delay.

The Michigan Court of Appeals addressed Petitioner's claim on direct review and stated that, while it was troubled by the eight-year delay between the alleged crime and the charges, Petitioner had not met his initial burden of demonstrating outcome-determinative prejudice.  The Court of Appeals opined that Petitioner did not suffer "actual and substantial" prejudice as a result of the delay and that, even if he did, the prosecution met its burden of showing that the delay was neither tactical nor deliberate.

### 1.  Prejudice

The Supreme Court considered the significance of lengthy pre-indictment delay in *United States v. Lovasco*, 431 U.S. 783 (1977).  The Supreme Court stated that "proof of prejudice" is generally a necessary element of a due process claim, *id*. at 790, and that **"**proof of actual prejudice makes a due process claim concrete and ripe for adjudication . . . ."  *Id*. at 789 (explaining *United States v. Marion*, 404 U.S. 307, 326 (1971)).

Petitioner claims that the Michigan Court of Appeals unreasonably applied *Lovasco*, because *Lovasco* requires proof of prejudice, whereas the Michigan Court of Appeals stated that Petitioner had failed to show "outcome-determinative prejudice."  While it is true that the *Lovasco* decision does not describe the necessary prejudice as "outcome-determinative," the decision does say that the prejudice must be "actual."  And the United States Court of Appeals for the Sixth Circuit reads *Lovasco* to hold that dismissal for pre-indictment delay is warranted when the defendant shows substantial prejudice to his right to a fair trial.  *United States v.*

8

*Brown*, 959 F.2d 63, 66 (6th Cir. 1992)).

The Michigan Court of Appeals stated three times in its decision that the prejudice had to be "actual and substantial." This choice of words reflects the language in *Lovasco* and *Brown*, and because Petitioner could only speculate about what his wife would have said if she were alive and able to testify in his behalf, he failed to show that he was prejudiced by the delay in bringing charges. The fact that the complainant's allegations might have been confirmed in his own mind during the eight-year delay went to his credibility, not prejudice.

### 2.  Reason for Delay

To establish a due process violation, *Lovasco* requires not only a showing of prejudice, but also "that the delay was an intentional device by the government to gain a tactical advantage." *Brown*, 959 F.3d at 66. In other words, there must be substantial prejudice and an invalid reason for the delay for a due process violation to occur. *Id.*

Petitioner's "failure to demonstrate actual prejudice makes it unnecessary to decide whether he established that the delay was an intentional device by the government to gain a tactical advantage." *United States v. Schaffer*, 586 F.3d 414, 425 (6th Cir. 2009), *cert. denied*, __ U.S. __, 130 S.Ct. 1921 (2010). But even if Petitioner had demonstrated "actual prejudice," the record does not establish that the delay was an intentional device by the prosecution to gain a tactical advantage over Petitioner.

The complainant's mother testified at the pretrial hearing on Petitioner's motion to quash that, in 1995, she took her son to the Melvindale Police Department and to the Wayne County Prosecutor's Office in Detroit to inform them of her son's allegations. She claimed that the police department did not contact her after she reported the incident and that a woman in the

prosecutor's office informed her after interviewing the complainant that the prosecutor would not be able to make a case because her son "was too easily led."  (Tr. Apr. 2, 2004, at 17-20, 23-24.)  Petitioner concludes from this testimony that the prosecution intentionally delayed bringing charges against him.

The assistant prosecutor in this case informed the trial court at the pretrial hearing that he could not find any record that the complainant was taken to the Wayne County Prosecutor's Office and interviewed there.  The prosecutor stated that the only person who fit the description given to him by the complainant's mother had no independent recollection of the case.  (*Id*. at 3-4.)

Sergeant Bradley Kropik of the Melvindale Police Department testified at the hearing that he could not find any record of a complaint concerning an assault on the complainant in 1995. (*Id*. at 6-10).  The charges against Petitioner were filed years after the incident, following the complainant's disclosure of the incident to his caseworker.

Even assuming that the prosecutor made an intentional decision not to press charges, there is no evidence that the decision was motivated by a desire to gain a tactical advantage over Petitioner.  And because Petitioner has not established actual prejudice, his right to due-process was not violated by the pre-arrest delay.  The state appellate court's decision on this issue was not contrary to, or an unreasonable application, of *Lovasco*.

### B.  Trial Counsel

The second and third habeas claims allege ineffective assistance of trial counsel. Petitioner contends that his trial attorney:  (1) used an erroneous legal theory to support his motion to quash the charges; (2) failed to prepare for trial or adequately test the prosecution's

10

case; (3) pleaded Petitioner guilty to count two of the information; (4) failed to investigate a potential defense; (5) misrepresented the law to him; and (6) failed to challenge the use of impermissible hearsay. The Michigan Court of Appeals addressed the first three claims of ineffective assistance on the merits and rejected them. The trial court addressed the latter three claims of ineffective assistance and found no merit in them.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), is clearly established federal law for purposes of evaluating an ineffective-assistance-of-counsel claim. *Cullen v. Pinholster*, __ U.S. __, __, 131 S. Ct. 1388, 1403 (2011). Under *Strickland*, an attorney is constitutionally ineffective if his or her "performance was deficient" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

To establish deficient performance, a habeas petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

To demonstrate that counsel's performance prejudiced the defense, a habeas petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. at 788 (internal and

11

end citations omitted).

### 1.  Defense Counsel's Motion to Quash

Petitioner alleges that his trial attorney made errors in his motion to quash or to dismiss the charges.  According to Petitioner, defense counsel used an erroneous legal theory and cited a statute and court decision that were totally inapplicable.

Defense counsel argued that Petitioner was denied his right to a speedy trial, but the Speedy Trial Clause is concerned with delay between the filing of an indictment or information and trial, not pre-indictment delay.  *Lovasco*, 431 U.S. at 788.  Stated differently, "the Speedy Trial Clause of the Sixth Amendment imposes restraints on the length of post-accusation delay." *Id*. at 791 n. 10.  The delay in this case occurred before formal charges were filed. Consequently, defense counsel erred when he relied on a speedy trial theory.

The trial court, however, recognized counsel's error and analyzed whether Petitioner was prejudiced by the delay between the incident being reported and the bringing of charges.  (Tr. Apr. 2, 2004, at 33, 38).  And the Michigan Court of Appeals analyzed Petitioner's claim under *Lovasco*.  Because the state courts recognized the true nature of the claim, defense counsel's legal error did not prejudice the defense, and Petitioner was not denied effective assistance of counsel.

### 2.  Counsel's Alleged Failure to Prepare for Trial

Next, Petitioner alleges that his trial attorney failed to prepare adequately for trial and failed to adequately test the prosecution's case.  Petitioner notes that defense counsel produced no defense witnesses and conducted a cursory cross-examination of the complainant and the complainant's mother.  Petitioner contends that defense counsel focused too much on the

complainant's father's molestation of the complainant's sister, failed to cross-examine the state trooper who took a statement from Petitioner, and declined to say anything negative about the complainant during closing arguments.

### a.  Failure to Call Witnesses

Petitioner faults his trial attorney for not producing any defense witnesses at trial, but Petitioner chose not to testify because he suffers from anxiety.  (Tr. June 21, 2004, at 48.)  He has not named any other witnesses that his trial attorney could have called, although he does say in claim four that appellate counsel was ineffective for not raising a claim about trial counsel's failure to call Petitioner's stepdaughters as witnesses.  There is no indication in the record that the stepdaughters knew anything about the charged crimes.  Although Petitioner states that his stepdaughters could have testified that his psychological disorders (agoraphobia, anxiety, depression, and panic attacks) would have made him unable to commit the crimes, the stepdaughters were only about ten and twelve years of age at the time of the crimes and about eighteen or twenty at the time of trial.  It is unlikely that they would have been qualified to testify about Petitioner's disorders and ability to commit the crimes.

The Michigan Court of Appeals stated that defense counsel could have questioned the individuals who supposedly "coached" the complainant's testimony.  The complainant testified that he informed his mother, his case worker, a sheriff, and a state trooper about the incident. However, he maintained at trial that he "came out and told" his case worker because he "just wanted to tell someone."  (*Id*. at 22.)  His mother also gave the impression that the disclosure came without any prompting.  (*Id*. at 37.)  Petitioner merely speculates that adults "coached" the complainant to testify as he did.  Therefore, defense counsel was not ineffective for failing to call

13

witnesses to testify about "coaching" the complainant's testimony.

### b.  The Adequacy of Cross-Examination

As for the failure to conduct more extensive cross-examination at trial, defense counsel explained to the trial court that he did not intend to ask the complainant a lot of questions because he anticipated that the complainant would have memory problems.  He suspected that the memory loss was due to the complainant being developmentally delayed and only five years old at the time of the crime.  (*Id*. at 8.)  To his credit, defense counsel questioned the complainant about his failure to yell or scream when the incident occurred even though he thought that his aunt was upstairs at the time.  (*Id*. at 26.)

Counsel's questions about the complainant's father molesting the complainant's sister (*id*. at 27-29) in all probability were intended to suggest that the complainant's father, and not Petitioner, was responsible for the crimes.  Counsel's failure to say anything negative about the complainant during closing arguments was a strategic decision.  He thought that negative comments about the complainant would be inappropriate, unnecessary, or unreasonable.  (*Id*. at 51.)

Counsel could have cross-examined the state trooper who took Petitioner's pretrial statement.  At the preliminary examination, the trooper testified on direct examination that Petitioner had informed him that he placed his mouth on the complainant's penis.  On cross-examination of the trooper, defense counsel elicited testimony that Petitioner had denied any other type of contact with the complainant.  According to the trooper, Petitioner specifically denied anal contact, which was the basis for count one, and denied putting his penis in the child's mouth, the basis for count three.  (Tr. Feb. 2, 2004, at 27-28.)

14

Petitioner was not prejudiced by defense counsel's failure to question the state trooper at trial about Petitioner's denial of anal penetration of the complainant, because the trial court ultimately acquitted Petitioner of that count. The failure to question the trooper about the fact that Petitioner denied putting his penis in the complainant's mouth likely did not make a difference in the outcome of the case, because the complainant was adamant and explicit about Petitioner putting his penis in the complainant's mouth and ejaculating. (Tr. June 21, 2004, at 19-20.) The complainant's mother corroborated this testimony when she testified about what the complainant had told her (*id*. at 33), and the trial court indicated on post-conviction review that it had found the complainant to be credible. (Tr. Feb. 25, 2005, at 15.)

The Michigan Court of Appeals stated that, in light of Petitioner's pretrial statement to the police, "no further witnesses or testimony could have assisted his defense" and "[t]herefore, any error or omission on the part of defense counsel in this regard was not outcome determinative." Given the "double deference" due to the state court's adjudication of an ineffectiveness claim, this Court concludes that the state court's conclusion was not unreasonable.

### 3. Conceding Guilt

Petitioner alleges that defense counsel was ineffective for conceding Petitioner's guilt on count two, which charged Petitioner with inserting the victim's penis in his mouth. The Michigan Court of Appeals held that the concession was not outcome-determinative in light of Petitioner's taped admission to the state police that he kissed the complainant's penis.

Petitioner's taped statement to a state trooper was played at trial. Although the court reporter did not transcribe the content of the audiotape for the record, the trooper testified at the

15

preliminary examination that Petitioner had admitted to placing his mouth on the victim's penis. Petitioner demonstrated the contact "by taking the tip of his index finger and placing it to . . . his lips." (Tr. Feb. 2, 2004, at 27.) I

Fellatio "requires entry of a penis into another person's mouth," *People v. Reid*, 233 Mich. App. 457, 480 (1999),[3] and Petitioner apparently did not admit to the state police that he inserted the complainant's penis in his mouth. Instead, he informed the police that he had kissed the complainant's penis for approximately thirty seconds. (Tr. June 21, 2004, at 50.)

Nevertheless, an attorney is not automatically ineffective for conceding the defendant's guilt, *see Florida v. Nixon*, 543 U.S. 175, 189-91 (2004), and the complainant testified at trial that Petitioner actually put the complainant's penis in Petitioner's mouth. (Tr. June 21, 2004, at 19.) The victim's mother subsequently testified that the complainant never told her that Petitioner merely kissed his penis. (*Id*. at 36-37.)

In light of the testimony at trial and Petitioner's admission to the police that he kissed the complainant's penis, defense counsel might have conceded guilt on count two for strategic reasons. He may have hoped that he could persuade the trial court to acquit Petitioner on the other charges or be lenient at sentencing. In fact, at the sentencing, he mentioned Petitioner's admission of guilt and then asked the trial court to depart downward from the sentencing guidelines on the ground that there were no prior or subsequent incidents of criminal sexual

---

[3] In *People v. Waclawski*, 286 Mich. App. 634 (2009), *appeal denied*, 488 Mich. 1054 (2011), a different panel of the Michigan Court of Appeals concluded that "the *Reid* Court's interpretation of fellatio is fundamentally flawed and contrary to the plain language of the statute" and that, under the dictionary definition of fellatio, fellatio is "oral stimulation of the penis." *Id*. at 676-77. The *Waclawski* court nevertheless recognized that it was bound by the decision in *Reid*. *Id*. at 677.

16

conduct.  (Tr. July 6, 2004, at 11-13.)

Petitioner then addressed the trial court and said:

> This incident was nine years ago, and I am truly sorry that if (sic) ever
> happened.  I wish it never had happened.  I was really in an intoxicated state [of]
> mind.  I was drinking that night, but I know for a fact that I'll swear on the Bible
> right now that nothing else happened except for the one offense, and I swear to
> that, Your Honor.  I'm truly sorry, and I am ashamed and embarrassed about it,
> and I beg you for leniency, Your Honor.

(*Id*. at 14-15.)

It is possible that Petitioner made a similar admission to defense counsel before trial and

that the admission convinced counsel to concede guilt on claim two.  That approach did not fall

outside the presumption of sound trial strategy and did not amount to constitutionally deficient

performance.

### 4.  The Alleged Failure to Investigate

Petitioner claims that defense counsel should have investigated a defense that the

complainant fabricated the charges and falsely charged him with criminal sexual conduct.

Petitioner claims that there a valid basis for this defense because the complainant had been

diagnosed with oppositional defiant disorder and attention deficient/hyperactivity disorder.

In addition, alleges Petitioner, the complainant blamed him for accusing the complainant's father

of sexually molesting a child.  Petitioner contends that the complainant falsely accused him of

criminal sexual conduct as revenge for Petitioner causing the complainant's father to be

imprisoned.

Petitioner admits that the symptoms of oppositional defiant disorder vary according to the

age of the individual and the severity of the disorder, and the record contains no evidence that

the complainant was seeking revenge for something that Petitioner did to the complainant's

father.  Therefore, defense counsel was not ineffective for failing to investigate the complainant's disorders or reasons to be revengeful.  "An attorney is not expected to follow up on every possible avenue of inquiry regardless of how improbable it is that that avenue would lead to useful evidence."  *Haliym v. Mitchell*, 492 F.3d 680, 712 (6th Cir. 2007).

Petitioner also implies that defense counsel should have pointed out that Petitioner suffers from agoraphobia, depression, anxiety, and panic attacks.  According to Petitioner, the complainant's testimony was not plausible because someone with Petitioner's stress and anxiety disorders would not have engaged in sexual abuse in the basement of his home while his wife was upstairs.  This argument lacks merit because, as the trial court recognized, Petitioner's admission to the police that he kissed the complainant's penis made a defense of fabrication and false allegation untenable.  Defense counsel was not ineffective for failing to advocate a meritless position.

### 5. The Alleged Misrepresentation of the Law

Petitioner asserts that defense counsel misrepresented the law to him on the issue of whether the complainant's social worker, Carla Shastal, could be called as a witness and cross-examined.  Petitioner contends that Ms. Shastal could have helped his case by describing a very different version of the incident.  Petitioner asserts that he waived presentation of Ms. Shastal as a witness because defense counsel informed him that his conversation with Ms. Shastal was privileged.

There are exceptions to the privileged communication between a social worker and his or her client.  *See People v. Stanaway*, 446 Mich. 643, 659 (1994) (noting exceptions to the social worker - client privilege for disclosures made during the course of internal supervision of the

18

social worker, disclosures made under the duty to warn third parties, and disclosures made

because the client waived the privilege).  But even if the communication between the

complainant and Ms. Shastal was not privileged, the complainant testified at trial that he

voluntarily informed Ms. Shastal about the incident with Petitioner "[b]ecause [he] was sick of it

and . . . just wanted to tell someone."  (Tr. June 21, 2004, at 21-22).  He obviously trusted Ms.

Shastal enough to confide in her, and there is no basis for concluding that Ms. Shastal would

have described a different version of the facts and testified in Petitioner's favor.  Ms. Shastal

initiated the charges against Petitioner, and defense counsel stated that he was waiving Ms.

Shastal as a witness because she would not add anything probative to the case.  (*Id*. at 47.)  The

Court concludes that defense counsel's alleged misrepresentation of the law concerning the

social worker/client privilege did not prejudice the defense.

### 6. The Failure to Challenge the Admission of Hearsay

Petitioner's final claim about trial counsel alleges that counsel should have challenged

the use of impermissible hearsay at trial.  The alleged hearsay was the complainant's mother's

testimony about the complainant's comments to her concerning the incident with Petitioner.  (*Id*.

at 33-37.)

The trial court stated on review of this claim that the testimony was admissible under

Michigan Rule of Evidence 803A, the hearsay exception for a child's statement about a sexual

act.  Rule 803A provides:

> A statement describing an incident that included a sexual act performed with or on the
> declarant by the defendant or an accomplice is admissible to the extent that it
> corroborates testimony given by the declarant during the same proceeding, provided:
>
> (1) the declarant was under the age of ten when the statement was made;

(2) the statement is shown to have been spontaneous and without indication of manufacture;

(3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and

(4) the statement is introduced through the testimony of someone other than the declarant.

Petitioner contends that the hearsay in his case did not meet the criteria of subsections (2) or (3) of this rule and that the trial court erred in relying on the rule during post-conviction proceedings. However, the prosecutor maintained at trial that the rule was applicable (Tr. June 21, 2004, at 5), and it is unlikely that defense counsel would have prevailed if he had objected to the mother's testimony. It was at least plausible that the elements of the rule were satisfied because the complainant was five years old when he made the statements to his mother, and he apparently made the statements spontaneously after his mother returned home from a rehabilitation center. Therefore, defense counsel was not ineffective for failing to challenge the admission of the mother's testimony, and the allegedly deficient performance did not prejudice the defense.

### 7. Conclusion on the Claims about Trial Counsel

For all the reasons given above, trial counsel's performance either was not deficient or the deficient performance was not prejudicial because there is not a reasonable probability that the result of the proceeding would have been different but for the alleged errors. Petitioner therefore has no right to relief on the basis of his claim about trial counsel.

### C. Appellate Counsel

The fourth habeas claim alleges that Petitioner was denied his federal constitutional right

to the effective assistance of appellate counsel.  Petitioner asserts that appellate counsel should have raised the issue of trial counsel's failure to (1) investigate and call Petitioner's stepdaughters as witnesses and (2) raise a suggestive-fabrication and false-allegation defense. The trial court determined that it did not have jurisdiction to address this issue because it did not have the authority to grant a new appeal, which, in the court's opinion, was the only remedy for a claim of ineffective assistance of appellate counsel.

### 1.  Clearly Established Federal Law

The *Strickland* standard applies to claims about appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  To prove the deficient-performance prong of *Strickland*, Petitioner must show that his appellate attorney was objectively unreasonable in failing to raise nonfrivolous issues on appeal.  *Id*. at 285.  To satisfy the prejudice prong, Petitioner must demonstrate a reasonable probability that he would have prevailed on appeal were it not for his attorney's unprofessional errors.  *Id*. at 285-86.

> Failure of appellate counsel to raise an issue on appeal can amount to constitutionally ineffective assistance.  *McFarland* [*v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004)].  Yet, counsel has no obligation to raise every possible claim and "the decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment."  *Id*.  An appellate attorney is not required to raise a non-meritorious claim.  *See Wilson v. Mitchell*, 498 F.3d 491, 514–15 (6th Cir. 2007).

*Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011).

### 2.  Failure to Challenge Trial Counsel's Failure to call Witness

Petitioner asserts that appellate counsel should have raised the issue of trial counsel's failure to call witnesses at trial.  The two witnesses in question were Petitioner's stepdaughters,

who were ten and twelve years of age at the time of the alleged crime, but eighteen and twenty at trial. Petitioner claims that his stepdaughters would have cast doubt on the complainant's testimony by testifying about the length of time it would have taken to commit the crimes. According to Petitioner, the witnesses also would have testified about Petitioner's and the complainant's psychological disorders and how Petitioner was incapable of committing the crimes, given his anxiety.

While there is some indication in the record that the two stepdaughters may have been at home during the alleged crimes, Petitioner merely presumes that his stepdaughters would have been capable of addressing his and the complainant's psychological disorders or would have noticed a change in the complainant's attitude toward Petitioner after the incident. It is also unlikely that his stepdaughters would have been comfortable testifying about sexual matters, particularly the length of time that it would take to commit the sexual acts that Petitioner supposedly committed. The Court concludes that defense counsel was not ineffective for failing to call Petitioner's stepdaughters as witnesses and, therefore, appellate counsel was not ineffective for failing to raise this issue on appeal.

### 3.  Failure to Challenge Trial Counsel's Lack of a Suggestive Fabrication and False-Allegation Defense

Petitioner alleges that his appellate attorney was ineffective for not claiming on appeal that trial counsel was ineffective for failing to investigate and raise a suggestive-fabrication and false-allegation defense at trial. According to Petitioner, if trial counsel had made a slight investigation, he would have learned that the complainant had been diagnosed with oppositional defiant disorder.

The record indicates that the complainant had a learning disability, was easily distracted,

22

and had emotional problems, but there is no evidence that he fabricated the charges or was influenced by others to say bad things about Petitioner.  He claimed at the preliminary examination that he disclosed the sexual abuse to a case worker while he was in foster care because he was upset and wanted to tell someone about it.  He claimed that what Petitioner had done to him was wrong and sickening.  (Tr. Feb. 4, 2004, at 19-20.)

The complainant also testified at trial that he had simply "wanted to tell someone" about the incident with Petitioner.  (Tr. June 21, 2004, at 21-22.)  And his mother testified that the complainant told her about the incident with Petitioner without any prodding from her.  According to her, the complainant was angry and said, "I've got to tell you I've been hurt."  (*Id.* at 33-34, 37.) Furthermore, as noted above, Petitioner's admission to the police that he kissed the complainant's penis made a defense of suggestive-fabrication and false-allegation untenable.

### 4.  Conclusion

Petitioner's trial attorney was not ineffective.  Therefore, appellate counsel was not ineffective for failing to raise certain issues about trial counsel in the appeal of right.  "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

### D.  The Prosecutor

The fifth habeas claim alleges that prosecutorial misconduct deprived Petitioner of due process and a fair trial.  Petitioner asserts that the prosecutor continuously led the complaining witness during direct examination, bolstered the complainant's testimony, and referred to nonexistent evidence in the record.

Petitioner first raised his prosecutorial-misconduct claim in his motion for relief from

23

judgment.  The trial court found no merit in the claims and rejected them.

### 1.  Clearly Established Federal Law

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  To prevail on his claim, Petitioner must demonstrate that the prosecutor's remarks infected the trial with such unfairness "as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

Courts in this Circuit "engage[] in a two step inquiry to determine whether the prosecutorial misconduct rises to the level of unconstitutionality.  'To satisfy the standard for prosecutorial misconduct, the conduct must be both improper and flagrant.'" *Matthews v. Parker*, 651 F.3d 489, 505 (6th Cir. 2011) (quoting *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006)).

### 2.  Leading the Complainant

Petitioner complains that the prosecutor used leading questions on direct examination of the complaining witness at trial.  "This claim relates to a state rule of evidence, and federal habeas review of state court evidentiary rulings is extremely limited." *Jordan v. Hurley*, 397 F.3d 360, 362 (6th Cir. 2005) (citing *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990)). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error render[ed] the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)).

The complainant in this case had a learning disability and could be distracted easily.  (Tr. Feb. 2, 2004, at 3.)  Under the circumstances, it was not fundamentally unfair to ask him leading questions.  The Michigan Rules of Evidence permit the use of leading questions "to develop the witness' testimony," Mich. Rule of Evid. 611(d)(1), and it is not improper to ask leading questions on direct examination when the questions are used to clarify testimony.  *See United States v. Kuehne*, 547 F.3d 667, 692 (6th Cir. 2008).

Furthermore, Petitioner's only example of leading questions on direct examination is the following excerpt from the transcript of trial:

Q.      [by the prosecutor] Do you remember were you watching T.V., watching movies or anything like that?

A.      [by the complainant]  I don't remember.

Q.      Do you remember if you saw any nasty kind of movies?

A.      Yeah.  I remember that.

(Tr. June 21, 2004, at 15 .)

Defense counsel objected at this point, and the prosecutor admitted that he was leading the witness.  The trial court sustained the objection and stated that it would disregard the answer. The prosecutor then proceeded to approach the issue by asking nonleading questions, which the complainant answered without further objection from defense counsel.  (*Id*. at 15-16.)  The alleged error was not flagrant and did not deprive Petitioner of a fundamentally unfair trial.

### 3.  Bolstering the Complainant's Testimony

Petitioner asserts that the prosecutor inappropriately bolstered the complainant's testimony during closing arguments by characterizing the testimony as consistent over time.  The comments read:

> [T]he first thing that strikes me in this case is the fact that the [complainant] has been consistent every time that he's relayed the events that happened to him back when he was five years old.
>
> When he first told his mother back in 1995 at some point in time what his uncle had done to him, that's exactly the same thing he has said every time. And I think that that consistency rings like a bell telling the truth in the fact that he's always said what happened to him in that one day. There's never been a waver one way or the other. It's always been two acts of fellatio, and also that act of the penetration into his anal area.

(*Id*. at 49-50.) Petitioner claims that there was no evidence supporting the assertion that the complainant's testimony was consistent over time.

A prosecutor may not bolster or vouch for a witness' testimony by expressing a personal belief in the witness' credibility. *United States v. Reid*, 625 F.3d 977, 982 (6th Cir. 2010). And a prosecutor commits plain misconduct by stating that a victim's testimony has been consistent over time when there was no evidence about whether the victim's story was unchanged. *Washington v. Hofbauer*, 228 F.3d 689, 700-02 (6th Cir. 2000).

The complainant in this case testified that he spoke with his mother, his caseworker, a sheriff, and a state trooper about the incident with Petitioner. (Tr. June 21, 2004, at 20-23.) He indicated that he told his case worker the same thing that he had told his mother years earlier. (*Id*. at 12-13.) He also acknowledged telling a judge during a prior court proceeding that Petitioner put his penis in his butt and in his mouth (*id*. at 24-25.) The complainant's mother subsequently testified that the complainant had told her about Petitioner putting his penis in his butt and mouth and putting the complainant's penis in Petitioner's mouth. (*Id*. at 33, 36-37.)

Unlike *Washington v. Hofbauer*, 228 F.3d at 700-02, there was some testimony in this case that the complainant consistently told the same story. The prosecutor therefore did not inappropriately bolster or vouch for the complainant's testimony by characterizing the

complainant's testimony as consistent over time.

### 4.  Referring to Facts Not in Evidence

During closing arguments, the prosecutor referred to the complainant's prior statement about "white stuff" coming from Petitioner's penis.  The prosecutor's comment was:

> We also know another thing . . . that even back when he was five years old back in 1995 or when he relayed these events to his mother, he was able to tell her and talk about white stuff coming out the Defendant's penis and going into his mouth which he had to spit out.

(Tr. June 21, 2004, at 50.)

Petitioner incorrectly claims that the first time anyone made a statement about him ejaculating was at his trial in 2004.  The complainant testified about ejaculation at the preliminary examination.  (Tr. Feb. 2, 2004, at 15-17.)  Although neither the complainant, nor his mother, testified at trial that the complainant had mentioned ejaculation back in 1995 when he disclosed the sexual abuse, proof of ejaculation is not necessary to establish the penetration element of first-degree criminal sexual conduct.  Mich. Comp. Laws § 750.520a(r); *People v. Denmark*, 74 Mich. App. 402, 415 (1977).  Therefore, the prosecutor's alleged misstatement of the facts was not a flagrant error.

### 5.  Conclusion

The prosecutor's questions and remarks either were not improper or they were not so flagrant as to warrant reversal.  Consequently, Petitioner is not entitled to habeas relief on the basis of his prosecutorial-misconduct claim.

### E.  The Weight and Sufficiency of the Evidence

Petitioner's sixth and final claim alleges that the verdict was against the great weight of the evidence and that the evidence presented at trial was insufficient to convict him of count

three (Petitioner's penis in the complainant's mouth).   Petitioner claims that the prosecutor failed to prove the element of penetration.

Petitioner presented his great-weight-of-the-evidence claim to the state courts on collateral  review.  The trial court adjudicated the claim on the merits and concluded that the guilty verdicts were not against the great weight of the evidence.

The contention that the conviction was against the weight of the evidence is a state-law argument, and a federal habeas court is only allowed to review issues of federal law.  *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007).  Thus, the weight-of-the-evidence claim is not cognizable on habeas corpus review.

### 1.  Clearly Established Federal Law

Petitioner also contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt.  The Supreme Court held in *Jackson v. Virginia*, 443 U.S. 307 (1979),

> that a conviction with insufficient evidence violates the defendant's federal due process rights.  443 U.S. at 316, 99 S. Ct. 2781.  To determine whether sufficient evidence supports a particular conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. at 319, 99 S. Ct. 2781.

*White v. Steele*, 602 F.3d 707, 709 (6th Cir. 2009), *cert. denied*, __ U.S. __, 131 S. Ct. 130 (2010).  This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Jackson*, 443 U.S. at 324 n.16.  In Michigan,

> [t]o prove [criminal sexual conduct in the first degree] under MCL 750.520b(1)(a), the prosecution [is] required to show that defendant engaged in sexual penetration with another person under the age of thirteen.  "Sexual penetration" means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). "Fellatio" is not defined in the statute,

28

but [the Michigan Court of Appeals] has interpreted the act of fellatio to require
the entry of a penis into another person's mouth. *People v. Reid*, 233 Mich. App.
457, 480, 592 N.W.2d 767 (1999). The *Reid* Court interpreted fellatio not to
consist of merely any oral contact with the male genitals. *Id.* (" 'fellatio' does not
consist merely of 'any oral contact with the male genitals,' but rather requires
entry of a penis into another person's mouth") (emphasis and citation omitted).

*Waclawski*, 286 Mich. App. at 676.

## 2. Application

The complainant was approximately five years old at the time of the alleged crime (Tr.

June 21, 2004, at 8), and he testified at trial that Petitioner put his penis in the complainant's

mouth and made him suck it. (Tr. June 21, 2004, at 14-15, 19-20, 25.) This testimony

established the element of penetration of a person under the age of thirteen.

Petitioner nevertheless alleges that the prosecutor impermissibly extracted the evidence

from the complainant by asking leading questions. As noted above, however, the complainant

was developmentally delayed, and it was not improper to use leading questions "to develop the

witness' testimony." Mich. Rule of Evid. 611(d)(1).


Petitioner also alleges that the complainant's credibility was questionable due to his

psychological disorders. This contention lacks merit because

[a] reviewing court does not reweigh the evidence or redetermine the credibility
of the witnesses whose demeanor has been observed by the trial court. *Marshall
v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is the
province of the factfinder to weigh the probative value of the evidence and
resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir.
1992). An assessment of the credibility of witnesses is generally beyond the
scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*,
231 F.3d 265, 286 (6th Cir. 2000).

*Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Petitioner's final challenge to the sufficiency of the evidence is that the trial court's order on the issue was not a reasonable or thoughtful answer to the issue. Petitioner notes that the state court did not cite *Jackson* and devoted only one paragraph to its application of the law to the facts before finding that the verdict was not against the weight of the evidence.

As explained above, "[t]he statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254(d) . . . ." *Richter*, 131 S. Ct. at 783. Section 2254(d) "bars relitigation of any claim 'adjudicated on the merits' in state court" unless adjudication of the claim resulted in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent or resulted in an unreasonable determination of the facts. *Id*. at 783-84. The state court's decision does not have to include an explanation of the court's reasoning. *Id*. at 784. In fact, the text in the statute does not even require a statement of reasons. *Id*. And even though the trial court did not cite *Jackson* in its decision, "a state court need not cite or even be aware of [Supreme Court] cases under § 2254(d)." *Id*. (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*)). Accordingly, Petitioner has no right to relief on the basis of his challenge to the trial court's decision on his sufficiency-of-the-evidence claim.

### IV.  Conclusion

The state court adjudications of Petitioner's claims were not contrary to clearly established federal law, an unreasonable application of clearly established federal law, or an unreasonable determination of the facts. Therefore, the petition for a writ of habeas corpus is denied.

Reasonable jurists nevertheless could debate the Court's assessment of Petitioner's claims that his trial attorney's trial performance was inadequate and that counsel was ineffective

for conceding guilt. Therefore, a certificate of appealability may issue on those aspects of habeas claim two. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may proceed *in forma pauperis* on appeal because he was permitted to proceed *in forma pauperis* in the District Court, and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3).


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: December 29, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 29, 2011.


S/Denise Goodine
Case Manager

31